**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMARIN PHARMACEUTICALS IRELAND LIMITED,<br><br>                         Plaintiff,<br><br>              v.<br><br>FOOD AND DRUG ADMINISTRATION; MARGARET A. HAMBURG, M.D., Commissioner of Food and Drugs; KATHLEEN SEBELIUS, Secretary of Health & Human Services,<br><br>                         Defendants. | Civil Action No. 14-324 (RDM) |

## <u>MEMORANDUM OPINION AND ORDER</u>

In this action brought under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*, Plaintiff Amarin Pharmaceuticals Ireland Limited ("Amarin") challenged the Food and Drug Administration's determination that Amarin's new drug, Vascepa (icosapent ethyl) Capsules ("Vascepa") was not entitled to a five-year period of market exclusivity under the Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417, 98 Stat. 1585 (1984) ("Hatch-Waxman Amendments"). As the Court has previously explained, the Hatch-Waxman Amendments entitle a drug manufacturer to a five-year exclusivity period only if "no active ingredient (including any ester or salt of the active ingredient)" of the new drug has been previously approved. 21 U.S.C. §§ 355(c)(3)(E)(ii), 355(j)(5)(F)(ii). Here, the Food and Drug Administration ("FDA") had concluded that Vascepa was not entitled to the five-year exclusivity period because it contained a molecule that was a component of a previously-approved drug. On May 28, 2015, this Court issued an opinion concluding that the interpretation of the Hatch-

Waxman Amendments set forth in the FDA's determination failed under both steps of the *Chevron* framework, *see Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and was arbitrary and capricious, *see* 5 U.S.C. § 706(2)(A). *Amarin Pharm. Ireland Ltd. v. FDA*, No. 14-cv-00324, 2015 WL 3407061 (D.D.C. May 28, 2015).

Watson Laboratories Inc. ("Watson") is a pharmaceutical company that hopes someday to market a generic version of Vascepa. It was not a party to the proceedings before the Court issued its May 28, 2015 Order. On July 22, 2015, however—55 days after the Court's opinion issued, and five days before the FDA's time to file a notice of appeal expired—Watson filed a motion to intervene (Dkt. 33) for the purpose of appealing the Court's Order. On the same day, Watson filed a notice of appeal. Dkt. 37. Watson explains that it moved to intervene upon learning that the FDA did not plan to appeal the Court's Order. Dkt. 33 at 7. Amarin and the FDA both oppose Watson's motion to intervene. Dkts. 40, 41. The time to file a notice of appeal has now elapsed, and neither Plaintiff nor Defendants has done so.

Although Watson's motion to intervene is still pending before the Court, its notice of appeal caused the pending action to be transmitted to the Court of Appeals, which docketed the appeal on July 30, 2015. *See Amarin Pharm. Ireland Ltd. v. FDA*, No. 15-5214 (D.C. Cir.). On September 14, 2015, Amarin and the FDA moved the Court of Appeals to dismiss the appeal for lack of jurisdiction. Briefing on their motions before that Court is almost complete.

Watson's motion to intervene (Dkt. 33) is now before this Court. The filing of Watson's notice of appeal, however, raises a procedural question that remains unresolved in this Circuit: whether the filing of a notice of appeal deprives a district court of jurisdiction over a motion to intervene. For the reasons discussed below, the Court concludes that it does and that the Court therefore lacks jurisdiction to adjudicate Watson's motion to intervene. The Court, however,

exercises its discretion under Federal Rule of Civil Procedure 62.1(a) to render an indicative ruling addressing some, but not all, of the issues posed by the motion to intervene.  Putting aside the question whether the Court's May 28, 2015 Order is a final, appealable order, the Court concludes that Watson has satisfied the Rule 24 prerequisites for intervention as of right, and the Court would grant Watson's motion to intervene were the Court of Appeals to deny the pending motions to dismiss and remand the matter.  The Court declines to offer an indicative ruling, however, on the question whether the May 28, 2015 Order is final and appealable.  Because that question implicates appellate jurisdiction and has already been briefed in the Court of Appeals, the Court concludes it is more appropriately addressed by the Court of Appeals.

## DISCUSSION

### I.      Jurisdiction

Before addressing the merits of the motion to intervene, the Court must first "satisfy itself of its authority" to decide the motion.  *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179 (D.C. Cir. 1984).  In particular, the Court must decide whether the filing of a notice of appeal by a would-be intervenor deprives the Court of jurisdiction over the case—including jurisdiction to decide the motion to intervene itself.  The answer to that question is not self-evident.  The courts are divided on "whether the district court loses jurisdiction to grant intervention to appeal after a notice of appeal has been filed," 15A Charles A. Wright et al., *Federal Practice and Procedure* § 3902.1 (2d ed. 2008 & Supp. 2015), and, to date, the D.C. Circuit has expressly declined to resolve the issue, *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1256 (D.C. Cir. 1999).  As explained below, the Court agrees with the majority of courts that have addressed the question and concludes that it lacks jurisdiction to adjudicate Watson's motion to intervene.

As a general rule, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam).  The reason for this rule is a practical one: it prevents that "broad class of situations . . . in which district courts and courts of appeals would both have had the power to modify the same judgment," *id.* at 59–60, by "implementing a commonsensical division of labor between the district court and the court of appeals," Wright et al., *supra*, § 3949.1.  As Judge Posner has explained, the rule is intended "to keep the district court and the court of appeals out of each other's hair." *In re Jones*, 768 F.2d 923, 931 (7th Cir. 1985) (Posner, J., concurring).

The rule, however, is subject to exceptions.  The most notable of these exceptions is set out in Federal Rule of Appellate Procedure 4(a)(4), which tolls the deadline in which to file a notice of appeal while certain motions are pending.  *See* Fed. R. App. P. 4(a)(4).  As the Supreme Court noted in *Griggs*, Rule 4(a)(4) does not merely toll the deadline for filing a notice of appeal upon the filing of certain motions; it "clarif[ies] . . . the courts' respective jurisdictions" when such a motion is made by "depriving the courts of appeals of jurisdiction" and explicitly providing that the district court will retain jurisdiction over case and motion alike.[1]  *See Griggs*, 459 U.S. at 59–60.  Today, the list of motions specified in Rule 4(a)(4) includes a motion for judgment under Rule 50(b), a motion to alter or amend the judgment under Rule 59, and a

---

[1]  The mechanism by which jurisdiction is preserved in the district court has changed in the three decades since *Griggs* was decided.  Until 1993, Rule 4(a)(4) provided that a notice of appeal filed before one of the specified motions was adjudicated "shall have no effect."  Fed. R. App. P. 4(a)(4) (1992); *cf. Griggs*, 459 U.S. at 61 ("The appeal simply self-destructs.").  The rule was changed in 1993 to provide that a notice of appeal filed before such a motion is adjudicated "becomes effective . . . when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(B)(i).

motion for relief under Rule 60, but not a motion to intervene under Rule 24.  *See* Fed. R. App.

P. 4(a)(4).

Rule 4(a)(4) is not the only exception to the rule that a properly filed notice of appeal

divests the district court of jurisdiction.  The district court retains jurisdiction, for example,

"where the defendant frivolously appeals, or takes an interlocutory appeal from a non-appealable

order."  *United States v. DeFries*, 129 F.3d 1293, 1303–04 (D.C. Cir. 1997) (citation omitted).

In addition, the courts have recognized that a district court may take actions "in aid of the

appeal" even after the appeal has been noticed.  *See, e.g.*, *Wolfe v. Clarke*, 718 F.3d 277, 281 n.3

(4th Cir. 2013); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir.

2003); *Local P-171, Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Thompson

Farms Co.*, 642 F.2d 1065, 1073 (7th Cir. 1981).  Thus, a district court may memorialize an oral

opinion in writing even when an appeal has been taken from the oral opinion, *see Inland Bulk

Transfer Co.*, 332 F.3d at 1013; *Jones*, 768 F.2d at 924 n.2, or enter clerical corrections to the

order on appeal, *see Doe v. Public Citizen*, 749 F.3d 246, 258 (4th Cir. 2014).  But, as the Court

of Appeals for the Fourth Circuit has observed, a district court "does not act in aid of the appeal

when it 'alter[s] the status of the case as it rests before the court of appeals.'"  *Id.* at 259 (quoting

*Coastal Corp. v. Tx. E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989)).

Against this backdrop, the courts of appeals in most of the circuits have concluded that

"an effective notice of appeal divests a district court of jurisdiction to entertain an intervention

motion."  *Doe*, 749 F.3d at 258 (collecting cases); *see also Taylor v. KeyCorp*, 680 F.3d 609, 617

(6th Cir. 2012); *Drywall Tapers & Pointers of Greater New York, Local Union 1974 v. Nastasi

& Assocs., Inc.*, 488 F.3d 88, 94–95 (2d Cir. 2007); *Roe v. Town of Highland*, 909 F.2d 1097,

1100 (7th Cir. 1990); *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 928 (5th Cir.

1983).  Only the Court of Appeals for the Third Circuit has "rejected the . . . view" that a would-be intervenor's notice of appeal deprives the district court of "authority to consider the motion to intervene."  *Halderman v. Pennhurst State Sch. & Hosp.*, 612 F.2d 131, 134 (3d Cir. 1979) (en banc).  For the following reasons, the Court declines to follow the Third Circuit and instead concludes that it lacks jurisdiction over Watson's motion to intervene.

The Third Circuit's holding was premised on the en banc court's interpretation of the Supreme Court's decision in *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977).  In *McDonald*, the plaintiff brought a putative class action challenging a United Airlines policy that required stewardesses, but not stewards, to remain unmarried.  *See id.* at 387–88.  The district court struck the class allegations on the ground that only those stewardesses who had exhausted their pre-suit remedies could participate in in a class action, and that the remaining stewardesses failed to satisfy Rule 23's numerosity requirement.  *Id.* at 388.  After the named plaintiffs declined to appeal the district court's judgment, members of the putative class moved to intervene in order to challenge the certification order, but the district court denied the motion as untimely.  *Id.* at 390.  The would-be intervenors appealed, and the Court of Appeals for the Seventh Circuit reversed.  *Id.*  The Supreme Court agreed with the Court of Appeals that the district court had erred in denying the motion for leave to intervene.  *Id.* at 396.  In doing so, the Court described—in a footnote—a different district court case, *American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co.*, 3 F.R.D. 162 (S.D.N.Y. 1942), as "closely in point."  *Id.* at 395 n.16.

In the Third Circuit's view, by citing the *American Brake* opinion with approval, the Supreme Court "tacitly rejected the . . . view that once a notice of appeal has been filed the [district] court los[es] authority to consider the motion to intervene."  *Halderman*, 612 F.2d at

134.  In contrast, the Courts of Appeals for the Fifth, Sixth, and Seventh Circuits have all held that the Third Circuit's reading of *McDonald* is unpersuasive, *see Taylor*, 680 F.3d at 617; *Roe*, 909 F.2d at 1100; *Avoyelles*, 715 F.2d at 928–29, and this Court agrees.  As an initial matter, the Court notes that the Supreme Court cited *American Brake* only for the unremarkable proposition that "several decisions of the federal courts" have permitted "post-judgment intervention for the purpose of appeal."  *McDonald*, 432 U.S. at 395.  But even if the Supreme Court meant to signal its broader approval of the *American Brake* decision, nothing in that decision casts doubt on the majority view that a notice of appeal divests the district court of jurisdiction to adjudicate a motion to intervene.  In *American Brake*, a party to the lawsuit filed a notice of appeal but then, "at or about the same time," settled the case, effectively withdrawing the appeal, which had not yet been docketed in the court of appeals.  *See Am. Brake*, 3 F.R.D. at 164.  Accordingly, by the time a third party moved to intervene, there was no bar to the district court's conclusion that it had not "lost jurisdiction" over the motion.  *Id.  American Brake* thus says little about whether a properly filed—and still pending—appeal divests a district court of jurisdiction to adjudicate a motion to intervene.

There are sound reasons, moreover, to follow the general rule and not to carve out an exception for motions to intervene.  For one, Rule 4(a)(4)—which explicitly provides that the district court retains jurisdiction to adjudicate certain post-judgment motions even after a notice of appeal is filed—does not include a motion to intervene.  Fed. R. App. P. 4(a)(4); *cf. Hoai v. Vo*, 935 F.2d 308, 311 (D.C. Cir. 1991) (concluding that a Rule 60(b) motion did not impair the Court of Appeals' jurisdiction because such a motion "is not . . . among the post-trial motions that operate to preclude appellate review during their pendency").  For another, applying the general rule yields the precise benefit that the Supreme Court described in *Griggs*: it prevents the

district court and the court of appeals from "attempt[ing] to assert jurisdiction over a case simultaneously." *Griggs*, 459 U.S. at 58.  To borrow Judge Posner's words, it "keep[s] the district court and the court of appeals out of each other's hair." *Jones*, 768 F.2d at 93 (Posner, J., concurring).  Here, moreover, that concern is tangible.  As explained below, Watson and the parties are almost done briefing the question of finality before the Court of Appeals, yet, as discussed below, the briefs that the parties have filed in opposition to Watson's motion to intervene ask this Court to address precisely the same question.  That posture is at odds with the orderly and efficient resolution of litigation, and it is at odds with the tenet that "it is essential that well-defined, predictable rules identify which court has th[e] power [to act] at any given time." *DeFries*, 129 F.3d at 1303.

Nor does the Court agree with Watson's argument that a district court may adjudicate a post-judgment motion to intervene under the exception for actions taken "in aid of the appeal." *See, e.g.*, *Doe*, 749 F.3d at 259 (concluding that "the 'in aid of appeal' exception is inapposite in this case").  The "aid" contemplated by this exception is generally ministerial in nature, such as amending an order to correct a clerical error or memorializing an oral order in a written opinion. *See Inland Bulk Transfer Co.*, 332 F.3d at 1013; *Jones*, 768 F.2d at 924 n.2; *Doe*, 749 F.3d at 258.  Here, Watson's motion to intervene contemplates action that is far from ministerial.  The motion is certainly in "aid" of the appeal in the sense that, without it, there would be no appeal.  But in many ways, Watson's contemplated intervention also fundamentally alters the nature of the case.  Most notably, a private litigant cannot simply stand in the shoes of an administrative agency in pursuing the appeal of a decision setting aside an agency action and remanding the matter to the agency.  Where an agency appeals, for example, it will typically argue that its decision and regulations are entitled to deference.  But, where an agency accepts the district

8

court's decision—and, in particular, if the agency then issues a new decision consistent with that decision—the deference considerations may dissipate or even flip.  As a result, although Watson's intervention would, in a sense, be in aid of an appeal, it would not be in aid of the same appeal that the government might have taken.  Because the presence or absence of an intervenor "alter[s] the status of the case as it rests before the court of appeals," *see Doe*, 749 F.3d at 259 (quoting *Coastal Corp.*, 869 F.2d at 820), and would alter the nature of the issues presented, the Court cannot conclude that the motion to intervene is merely in aid of the appeal.  *But see* Wright et al., *supra*, § 3902.1 (arguing that "it would be better to recognize that the district court can act" because "its action is in support of the appeal process, not in derogation of it").

Finally, Watson argues that the majority rule operates to deny putative intervenors their day in court—particularly in cases like this one, where the putative intervenor learns that the government will not appeal only days before the deadline for filing a notice of appeal.  According to Watson, at that point, its only available option was to move to intervene while filing a concurrent notice of appeal.  But that is not correct.  As the Seventh Circuit has observed, "a putative intervenor has several viable options for preserving the right of appeal until the district court rules on the intervention motion."  *Roe*, 909 F.2d at 1100.  The intervenor may file an emergency motion with the district court detailing the need for a timely ruling; it may file a motion for an extension of the time in which to take an appeal, as permitted by Federal Rule of Appellate Procedure 4(a)(5); or, if those mechanisms fail, it may file a notice of appeal and then move the court of appeals to remand the case so that the district court can adjudicate its motion.  *See id.* at 1099–1100.  Watson has availed itself of none of these options.

The Court, accordingly, concludes that it lacks jurisdiction to adjudicate Watson's motion to intervene.

## II.      Indicative Ruling

Although the Court concludes it lacks jurisdiction to decide Watson's motion, the Federal Rules of Civil Procedure provide a mechanism for the district court to issue an indicative ruling after an appeal has been docketed.  Rule 62.1(a) provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," the court may nonetheless indicate either that it "would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Civ. P. 62.1(a).  As explained below, the Court concludes that an indicative ruling addressing some, but not all, of the issues raised by Watson's motion to intervene is appropriate and may help advance the final resolution of this matter.

A party seeking to intervene as of right under Federal Rule of Civil Procedure 24(a) must satisfy four requirements: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests."  *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  A movant who seeks to intervene must also demonstrate that it has constitutional standing.  *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015).

The principal arguments that the FDA and Plaintiff make in opposition to Watson's motion to intervene turn on whether the Court's May 28, 2015 Order constitutes a final order that Watson would be entitled to appeal, if Watson were otherwise allowed to intervene.  In the view of the FDA, because "Watson has no right to appeal the remand order, it cannot claim inadequate

representation on an appeal it has no right to take." Dkt. 39-1 at 3. Amarin agrees, but also argues that because "Watson cannot appeal" the Court's May 28, 2015 Order, it lacks a "legally cognizable interest" in the "non-final remand order." Dkt. 41 at 5.

For the moment, the Court puts these arguments to the side and considers whether, if Watson was otherwise entitled to appeal the Court's May 28, 2015 Order, it would be entitled to intervene. With this significant caveat, the Court concludes that Watson would meet the requirements of Rule 24(a). After explaining why, the Court will then return to the question whether Watson is entitled to appeal the May 28, 2015 Order.

A. *Timeliness*

In addition to challenging Watson's ability to appeal the Court's Order, Amarin contends that Watson's motion to intervene was untimely. The Court disagrees. "Courts are generally reluctant to permit intervention after a suit has proceeded to final judgment, particularly where the applicant had the opportunity to intervene prior to judgment." *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 556 U.S. 848 (2009). But, as the Supreme Court explained in *McDonald*, a post-judgment motion to intervene is not untimely if the putative intervenor acts as soon as it is clear that the parties will not represent its interests. *McDonald*, 432 U.S. at 395–96. "The critical inquiry in every such case is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." *Id.* Following *McDonald*, "courts often grant post-judgment motions to intervene where no existing party chooses to appeal the judgment of the trial court." *Acree*, 370 F.3d at 50. That is precisely what Watson has done here.

This case is analogous to *Smoke v. Norton*, 252 F.3d 468 (D.C. Cir. 2001). In that case, a group of tribal officers moved to intervene to defend a decision of the Bureau of Indian Affairs

after the United States declined to take an appeal from an adverse judgment in the district court. The district court denied the motion as untimely, because the officers had "foregone an opportunity to pursue intervention during the pendency of the action." *Id.* at 470.  The Court of Appeals reversed, reasoning that a "post-judgment motion to intervene in order to prosecute an appeal is timely (if filed within the time period for appeal)" when "'the potential inadequacy of representation came into existence only at the appellate stage.'"  *Id.* at 471 (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)).  The same is true here.  Watson had no need to intervene until now, because its interests "were fully consonant with those of the Government, and those interests were adequately represented by the Government's litigation of the case."  *Smoke*, 252 F.3d at 471.

Amarin argues that this case can be distinguished from *Smoke* in at least two ways.  First, it argues that Watson's motion should be considered untimely because it did not move to intervene until 55 days after the Court's May 28, 2015 Order, whereas the putative intervenors in *Smoke* moved to intervene within weeks of the judgment in that case.  But the record reflects that Watson moved to intervene the day after it learned that the FDA would not appeal the Court's Order.  *See* Dkt. 33-2 at 2.  The fact that the FDA did not indicate whether it would take an appeal until shortly before the deadline to do so does not make Watson's motion untimely.  *Cf. McDonald*, 432 U.S. at 395–96 ("The critical inquiry in every such case is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment.").  Amarin also argues that Watson was on notice that the FDA might lose, and might decline to appeal any adverse judgment, long before it moved to intervene.  But Amarin points to no evidence in the record of "early warnings of danger," *United States v. British Am. Tobacco Australia Servs.,*

*Ltd.*, 437 F.3d 1235, 1239 (D.C. Cir. 2006)—at least none that would make the risk of abandonment on appeal any greater than it was in *McDonald* and *Smoke*.

Under these circumstances, the Court would conclude that Watson's motion to intervene was timely.

B. *Impairment of a Legally Protected Interest in the Action*

With the possible exception of the finality considerations discussed below, Watson has also demonstrated that it has legally protected interests in the case and that those interests have been impaired by the Court's May 28, 2015 Order. It is settled in this Circuit that drug manufacturers have an interest in their competitors' exclusivity proceedings sufficient to permit intervention, at least where the putative intervenors' exclusivity rights will be affected by the outcome of the case. *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (concluding that putative intervenor's "interest in limiting competition for its product is, 'by its very nature,' linked with [the Hatch-Waxman Amendments'] goal of limiting competition between generic manufacturers" (quoting *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 494 n.16 (1998)); *MD Pharm., Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 12–13 (D.C. Cir. 1998). Watson has demonstrated that its motion falls within this line of cases, because it has invested resources in developing a generic version of Vascepa, and the Court's Order, by vacating the FDA's determination that Amarin was not entitled to five years of exclusivity, will delay the FDA's review of Watson's abbreviated new drug application ("ANDA").

As the Court explained in its May 28, 2015 Opinion, the Hatch-Waxman Amendments "struck a compromise" between encouraging investment in innovative drugs and reducing the costs associated with developing generic equivalents by establishing a two-track application

13

process for new drugs.  *See Amarin Pharm.*, 2015 WL 3407061, at *1–2.  On the one hand, a manufacturer of a pioneer drug can obtain a five-year period of marketing exclusivity by showing that "no active ingredient" of the drug "has been approved in any other application."  21 U.S.C. §§ 355(c)(3)(E)(ii), 355(j)(5)(F)(ii).  On the other hand, a manufacturer seeking approval of a generic drug can take advantage of the ANDA process, which reduces the time and expense required to obtain approval for drugs, if it demonstrates that the generic drug has the same "active ingredient" as a drug the FDA has already approved as safe and effective.  *See id.* § 355(j)(2)(A).

Importantly, the Hatch-Waxman Amendments also provide generic drug manufacturers with an incentive to challenge unfounded patent claims.  The Amendments provide that the first applicant to submit an ANDA "that contains and lawfully maintains" a "Paragraph IV" certification is entitled to its own 180-day exclusivity period following the five-year exclusivity period for the pioneer drug.  *See* 21 U.S.C. § 355(j)(B)(iv).  A Paragraph IV certification, in turn, requires that the applicant indicate that, to the best of its knowledge, "each patent which claims the" pioneer "drug . . . is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the [ANDA] is submitted."  *See id.* § 355(j)(2)(vii)(IV).  The record here reflects that Watson was the first generic drug manufacturer to file a "Paragraph IV" certification relating to Vascepa and that the FDA acknowledged receipt of Watson's ANDA shortly after its administrative decision denying a five-year exclusivity period to Amarin.  *See* Dkt. 33-1 at 2–3.  Other generic drug manufacturers have since filed ANDAs seeking to market generic versions of Vascepa.  *Id.* at 6.

Watson has thus shown that it has at least two interests in the proceeding that the Court's May 28, 2015 Order is likely to impair.  First, the Court's Order is likely to delay the FDA's

14

review of Watson's ANDA.  If the FDA decides to grant Amarin a five-year exclusivity period

for Vascepa, it will not be able to review Watson's ANDA until, at the very earliest, July 2016,

when four of the five years of Amarin's period of market exclusivity will have elapsed.  *See* 21

U.S.C. §§ 355(c)(3)(E)(ii), 355(j)(5)(F)(ii).  This delay would be sufficient, standing alone, to

permit Watson to intervene.  *See Mova Pharm.*, 140 F.3d at 1075–76.  But because the five-year

exclusivity period also bars the FDA from even *accepting* an ANDA for review, *see* 21 U.S.C.

§§ 355(c)(3)(E)(ii), 355(j)(5)(F)(ii), a decision approving Amarin's application for a five-year

exclusivity period would also arguably require Watson to resubmit its "Paragraph IV" ANDA

four years into Amarin's five-year exclusivity period, causing it to lose its current claim as the

"first applicant" and its hold on the statutory 180-day exclusivity period available to generic drug

manufacturers.

   Amarin contends that Watson has not sustained any cognizable injury because the FDA

has not yet acted on Watson's ANDA application.  Dkt. 41 at 6.  That is true, and it is possible

that the FDA will reject the application for reasons unrelated to the present litigation.  Two

considerations, however, counsel in favor of permitting intervention.  First, if the Court's

decision were set aside, Watson would have a *current* entitlement to FDA *review* of its ANDA.

That is a substantial interest with real-world consequences.  Second, it would be a hollow

victory, at best, to permit Watson to challenge any delay in the FDA's review of the company's

ANDA only after the FDA has rendered a final determination on that application.  Indeed, it is

not at all clear that Watson would have standing to challenge the determination at that time, since

the injury associated with the delay would have already—irretrievably—occurred.  Similarly,

although the FDA contends that Watson would be able to challenge an adverse decision by the

FDA on remand, Dkt. 39 at 4, any exclusivity period the FDA might award Amarin might

expire—or at least might run most of its course—before the FDA rendered a new determination

and Watson would have the opportunity to obtain judicial review of that determination. *See*

*Amarin Pharm.*, 2015 WL 3407061, at *5 (noting that the FDA approved Vascepa on July 26,

2012).[2]

The Court, accordingly, would conclude that Watson has shown that it has legally

protected interests in the dispute that would be impaired by the Court's May 28, 2015 Order.[3]

C. *Adequacy of Representation*

Finally, again putting aside the question whether the Court's remand Order is final and

appealable, the Court would conclude that Watson's interests are not adequately represented by

the existing parties. While the FDA originally defended its administrative decision declining to

approve Amarin's application for a five-year exclusivity period, it informed Watson on July 21,

2015, that it would not appeal the Court's Order setting aside that decision, *see* Dkt. 33-2 at 2,

and it has not filed a notice of appeal. Thus, as in *Smoke*, the government's decision not to

appeal has left the putative intervenor's interests inadequately represented. *See Smoke*, 252 F.3d

at 471. Although they argue that the absence of a final, appealable order means "Watson has no

right to appeal," and thus "cannot claim 'inadequate' representation on appeal," Dkt. 39 at 1, the

FDA and Amarin do not otherwise contest that the FDA no longer adequately represents

Amarin's interests.

---

[2] Watson's claim is arguably unripe to the extent the FDA might, on remand, once again
conclude that Vascepa does not qualify for a five-year exclusivity period, thus avoiding any
harm to Watson. Whether the FDA retains the discretion to deny Amarin's application in light
of the Court's May 28, 2015 Order, however, is a question inextricably intertwined with whether
the Order is final, *see* Dkt. 40 at 5; Dkt. 41 at 6—a question that, as discussed below, the Court
concludes is appropriately left for the Court of Appeals.

[3] Watson has constitutional standing for the same reasons that it has legally protected interests in
the case. *See Mova Pharm.*, 140 F.3d at 1074 (identifying the two standards as the same).

Except as discussed below, therefore, the Court would conclude that Watson has shown that the FDA does not, at present, adequately represent the company's interests.

## III.    Appealability of the Court's Remand Order

All of this, however, disregards the principal issue that the FDA and Amarin raise in response to Watson's motion to intervene—whether the Court's May 28, 2015 Order vacating the FDA's determination and remanding the matter to the agency constitutes a final, appealable decision for purposes of 28 U.S.C. § 1291. *See N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 19 (D.C. Cir. 2008) ("[A] district court's remand order is not normally 'final' for the purposes of appeal under 28 U.S.C. § 1291."); *see also Sierra Club v. U.S. Dep't of Agric.*, 716 F.3d 653, 656 (D.C. Cir. 2013) ("This rule promotes judicial economy and efficiency by avoiding the inconvenience and cost of two appeals: one from the remand order and one from a later district court decision reviewing the proceedings on remand.").  That question, however, is currently pending before the Court of Appeals, where both the FDA and Amarin have moved to dismiss the appeal for lack of jurisdiction.  For the following reasons, the Court declines to issue an indicative ruling on the question whether the Mary 28, 2015 Order is appealable.

First and foremost, as the Court of Appeals has observed, "When appellate jurisdiction is at stake, what matters is the appellate court's assessment of finality, not the district court's . . . ." *Franklin v. District of Columbia*, 163 F.3d 625, 630 (D.C. Cir. 1998).  Nothing in Rule 62.1, moreover, changes this rule or invites district courts to opine on questions of appellate jurisdiction.  Rather, the purpose of Rule 62.1 is to promote judicial efficiency and fairness by providing a mechanism for the district court to inform the parties and the court of appeals how it would rule on a motion made after the district court has been divested of jurisdiction.  Where a district court concludes, for example, that newly discovered evidence warrants vacatur of a

judgment that is already on appeal, the court can issue an indicative ruling, thereby allowing the

court of appeals to remand the matter to the district court and obviating the need for the appeal.

*See Retirement Bd. of the Policemen's Annuity and Benefit Fund v. Bank of New York Mellon*,

297 F.R.D. 218, 221 (S.D.N.Y. 2013); *see also* Fed. R. Civ. P. 62.1 advisory committee's note.

"But an indicative rule on the very issue on appeal" would not promote judicial efficiency or

fairness; to the contrary, it would "only interrupt[] the appellate process." *Retirement Bd.*, 297

F.R.D. at 221.  Rule 62.1 was not meant to authorize the district court to provide unsolicited

advice to the court of appeals on an issue of appellate jurisdiction.  Here, rather than aiding the

Court of Appeals in its consideration of the pending motions to dismiss Watson's appeal, an

indicative ruling on the D.C. Circuit's appellate jurisdiction would do just what the filing of a

notice of appeal is designed to avoid; it would, to borrow Judge Posner's words yet again, get

"the district court and the courts of appeals" in "each other's hair."  *Jones*, 768 F.2d at 931

(Posner, J., concurring).

    Nor does the Court of Appeals' decision in *Smoke*, 252 F.3d 468, change this assessment.

In that case, as in this one, the putative intervenors sought to appeal an order remanding

proceedings to an administrative agency.  The district court denied the motion on the ground that

it was untimely, and the Court of Appeals reversed.  *Id.* at 471.  Judge Henderson, however,

concurred to note that, in her view, the remand to the district court was unnecessary because the

district court's original order had remanded proceedings to the agency and thus there was no

final order to appeal.  *See id.* at 472 (Henderson, J., concurring).  Rather than accept Judge

Henderson's invitation to resolve that question on appeal, however, the majority remanded the

matter to the district court, which denied intervention on multiple grounds, including the absence

of a final, appealable order. *Ransom v. Babbitt*, No. 98-cv-1422, slip op. at 12, 17 (D.D.C. Mar. 16, 2002); Dkt. 41-3.

As the district court noted on remand in *Smoke*, however, Judge Henderson's concurrence presented it with "a somewhat unusual situation," at odds with the "[t]raditional[]" practice of "reserv[ing]" questions of appellate jurisdiction for the Court of Appeals. *Id.* at 16–17. Moreover, nothing in the majority opinion indicated that this "traditional" rule would not apply in this context. To the contrary, the majority stressed that the answer to the question whether the challenged order was final did "not bear upon the narrow issue before" it, and that it would only address the question of finality if "the district court grant[ed] the appellants' motion to intervene and they appeal[ed] from the judgment." *Smoke*, 252 F.3d at 470 n.*. Nothing in the Court of Appeals' resolution of the "narrow issue" of timeliness suggests that district courts should opine, absent compelling reasons, on questions of appellate jurisdiction—particularly where those questions are pending before the Court of Appeals.

Finally, and for similar reasons, the Court also declines to reach Amarin's separate argument that Watson's notice of appeal was ineffective because Watson was not a party at the time it filed the notice of appeal. Dkt. 41 at 3 n.3. Like the question of finality, that question goes to the jurisdiction of the Court of Appeals and is appropriately left for that Court to address in resolving the pending motions to dismiss Watson's appeal.

## CONCLUSION

For the reasons set forth above, the Court will defer resolution of Watson's Motion to Intervene pending further action from the Court of Appeals. In accordance with Rule 62.1(b), Watson shall promptly notify the Clerk of Court of the Court of Appeals for the District of Columbia of the Court's indicative ruling.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  October 15, 2015